# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KRISTINA J. KITCHEN and
TAMMY S. MORALES,

          Plaintiffs,

v.

JEFFERSON SCHOOLS,
NELSON HENRY, and DEANN
WUELFING,

          Defendants.

_____/

Case No. 24-11810

Judith E. Levy
United States District Judge

Mag. Judge David R. Grand

## OPINION AND ORDER REMANDING CASE TO MONROE COUNTY CIRCUIT COURT FOR LACK OF SUBJECT MATTER JURISDICTION

On August 5, 2024, the Court ordered Jefferson Schools to show cause why this case should not be remanded to state court for lack of subject matter jurisdiction. (ECF No. 3.) Jefferson Schools responded to the Court's order to show cause, (ECF No. 4), and Plaintiffs set forth their opposition to the removal of their lawsuit from state to federal court. (ECF No. 11.) For the reasons set forth, the Court concludes that it lacks

subject matter jurisdiction and remands the case to Monroe County Circuit Court.

I. Background

Plaintiffs Kristina Kitchen and Tammy Morales filed a lawsuit against Defendants in Monroe County Circuit Court on May 30, 2024. They asserted claims of constructive discharge, intentional infliction of emotional distress, "harassment/discrimination," negligence, and "whistleblower/[retaliation]." (ECF No. 1, PageID.19–24.) Plaintiffs' claims arise from their employment in Jefferson Schools in Monroe County, Michigan. (*Id.* at PageID.5.)

On July 12, 2024, Jefferson Schools filed a notice of removal pursuant to 28 U.S.C. §1441, stating it had been served on June 25, 2024. (ECF No. 1, PageID.1–2.) In support of removal of the action, Jefferson Schools asserted that Plaintiffs stated in their complaint that they had filed complaints with the Equal Employment Opportunity Commission ("EEOC"), Plaintiffs alleged claims related to age discrimination, and Plaintiffs asserted claims under the Fourteenth Amendment pursuant to 42 U.S.C. §1983. (*Id.* at PageID.2.)

2

On August 5, 2024, the Court ordered Jefferson Schools to show cause why the case should not be remanded to state court for lack of subject matter jurisdiction. (ECF No. 3.) The Court explained that Jefferson Schools failed to specify the basis for subject matter jurisdiction, because it did not establish the existence of diversity jurisdiction or that there was a federal question presented on the face of the complaint. (*Id.* at PageID.69.) It also ordered Jefferson Schools to respond to a "discrepancy between the Defendants identified in the removal notice and those identified in the complaint," as well as providing further information about a fourth defendant named in the state court case, "Board of Education for Jefferson Schools." (*Id.* at PageID.72.) As set forth above, Jefferson Schools responded to the Court's order, (ECF No. 4), as did Plaintiffs. (ECF No. 11.)

## II.  Legal Standard

A defendant may remove a civil action from state to federal court under §1441 if the action includes claims arising "under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title)." 28 U.S.C. §1441(c)(1)(A). "Only state-court actions that originally could have been filed in federal court may be removed to federal

3

court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The Constitution and Congress give federal courts the authority to hear a case only when diversity of citizenship exists between the parties or when the case raises a federal question. *Id.* at 392. "The party that removed the case to federal court 'bears the burden of establishing federal subject matter jurisdiction.'" *Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 409 (6th Cir. 2024) (quoting *Vill. of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 377 (6th Cir. 2008); citing *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 468 (6th Cir. 2019)). "The question of jurisdiction is determined at the time of removal and application of the removal statute should be strictly construed and all doubts resolved in favor of remand." *Heyman*, 781 F. App'x at 468 (cleaned up).

### III. Analysis

Jefferson Schools argues that removal is appropriate under the substantial federal question doctrine and the artful pleading doctrine. Both arguments fail.

## A. The Substantial Federal Question Doctrine

Jefferson Schools asserts that the Court has subject matter jurisdiction based on the substantial federal question doctrine, because Plaintiffs' state-law claims necessarily implicate questions of federal law that are substantial and disputed. (ECF No. 4, PageID.77.)

The Sixth Circuit instructs courts to determine whether the substantial federal question doctrine applies by considering "whether (1) a state-law claim necessarily raises a stated federal issue, (2) that is actually disputed and substantial, (3) which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Estate of Cornell v. Bayview Loan Servicing*, 908 F.3d 1008, 1014 (6th Cir. 2018) (cleaned up). The category of cases that raise a substantial federal question under this doctrine is a "slim category . . . that is to be read narrowly." *Id.* (cleaned up).

Jefferson Schools argues that two portions of the complaint implicate this doctrine: Plaintiffs' allegations related to "discrimination

5

and a hostile environment based on their age" and "allegations related to the collective bargaining agreement between the District and the Jefferson Clerical Association." (ECF No. 4, PageID.77–78.)

### i. *Removal Based on the Age Discrimination in Employment Act*

Jefferson Schools points to claims related to Plaintiffs' age as a basis for subject matter jurisdiction. Jefferson Schools contends that Plaintiffs "effectively invoke the federal Age Discrimination in Employment Act ('ADEA')" in their complaint. (*Id.* at PageID.77.) In support of this contention, it notes that Plaintiffs assert that they experienced discrimination and a hostile environment due to their age, the ADEA bans such discrimination, and Plaintiffs filed complaints with the EEOC, the agency responsible for ADEA enforcement. (*Id.* at PageID.77–78.)

Plaintiffs respond that Michigan law bans discrimination based on age and that Jefferson Schools cites no authority indicating that filing an EEOC claim justifies removal of a state-law claim to federal court. (ECF No. 11, PageID.102–03.) Michigan law does indeed prohibit employers from discharging or discriminating against individuals based on age. *See* MCL § 37.2202. A plaintiff can therefore bring an age-related claim for

6

discharge, discrimination, and similar employment-related issues under Michigan law, even if they may also be able to bring such claims under the ADEA.

A state-law claim related to an employment dispute based on age does not "necessarily raise[]" a federal issue. *Estate of Cornell*, 908 F.3d at 1014. Stating an age discrimination claim need not invoke the ADEA when state-law claims are available. As the well-pleaded complaint rule establishes, multiple types of claims can arise out of the same set of facts and the plaintiff's status as "master of [their] complaint" allows them to choose whether to bring a state or federal law claim. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994) ("[T]he fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of action.") As Plaintiffs indicate, they intend to bring their claims under the Elliot-Larsen Civil Rights Act ("ELCRA"), a Michigan law. (ECF No. 11, PageID.103.) The complaint was filed in state court and does not reference the ADEA. Jefferson Schools does not demonstrate that these state-law claims "turn on" federal-law questions. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

The fact that Plaintiffs filed EEOC complaints is also irrelevant to whether the claims in the complaint fall under state law. (*See* ECF No. 1, PageID.19.) In fact, the complaint suggests that Plaintiffs' mention their EEOC claims at least in part to establish claims of retaliation under state law. (ECF No. 1, PageID.17.) Jefferson Schools' argument for removal based on the ADEA therefore fails.

      ii.      *Removal Based on § 301 of the Labor Management Relations Act*

Jefferson Schools also argues that because of references to a collective bargaining agreement ("CBA"), its removal of Plaintiffs' action was proper. It relies upon § 301 of the Labor Management Relations Act ("LMRA"). *See* 28 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties[.]")

Jefferson Schools focuses its argument on Morales' allegations related to "claims of [age] discrimination resulting in allegations of constructive discharge, or forced retirement, and reassignment related to a collective bargaining agreement." (ECF No. 4, PageID.79.) To

successfully bring an age discrimination claim, a plaintiff must show that "(1) [they are] member[s] of the protected class; (2) [they] suffered an adverse employment action . . . ; (3) [they were] qualified for the position; but (4) [they were] discharged under circumstances that give rise to an inference of unlawful discrimination." *Lytle v. Malady*, 458 Mich. 153, 172–73 (1998); *see also Town v. Mich. Bell Tel. Co.*, 455 Mich. 688, 695 (1997) (articulating the fourth element of the claim as requiring a plaintiff to show that "others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct").

As the Sixth Circuit instructs, "a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Adamo Demolition Co. v. Int'l Union of Operating Eng'rs Local 150, AFL-CIO*, 3 F.4th 866, 872 (6th Cir. 2021) (cleaned up). The point of this rule is to "preserve the effectiveness of labor arbitration and promote uniformity in labor disputes." *Id.* The Sixth Circuit sets forth a "two-step test" to determine whether a tort claim is preempted by § 301. *Id.* at 873. If (1) the elements of a state-law claim can be resolved without interpreting a CBA's terms, and (2) the right Plaintiffs assert is created by state law and not by a

9

CBA, then removal based on preemption by § 301 is inappropriate. *See id.* The Sixth Circuit has distinguished between cases focused on negotiated contractual terms in CBAs, which are preempted, and those "involving non-negotiable rights guaranteed by the State of Michigan." *Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of the U.S. & Can.*, 25 F.3d 1308, 1312 (6th Cir. 1994). To determine what sort of claims are being brought, the Court must look beyond the way a plaintiff labels their claims and "evaluate the *substance* of plaintiff's claims." *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 519 (6th Cir. 2012) (emphasis in original).

The complaint states as follows:

135. While Mrs. Morales was out of town, the secretary contract was negotiated.
136. Principal secretaries got a 2.5% increase, and general secretaries got a 2% increase. Mrs. Morales got nothing initially.
137. Mrs. Morales is the principal secretary and should have gotten a 2.5% increase. Yet she got 1% because of her seniority.
138. Mrs. Morales was discriminated against because of her seniority.
139. The decision was made by Mr. Nelson (on administrative leave), Ms. Wuelfing (acting superintendent) and Heidi Galati.

(ECF No. 1, PageID.14.)

Jefferson Schools' contention is that because Morales alleges "her pay increase was lower than others because of age discrimination" removal is proper. (ECF No. 4, PageID.78.) Although Jefferson Schools argues that these allegations are "related to" a CBA, it does not elaborate on how Plaintiffs' claims relate to the CBA. (*Id.*) Specifically, it fails to connect its arguments about the CBA to the elements of any claims alleged in the complaint. Nor does it explain what—if any—portions of the CBA the Court would have to interpret to resolve Plaintiffs' claims. It does not attach a CBA or refer to any specific contractual provisions of a CBA.

Further, there is some ambiguity about whether the contract referred to in the relevant portion of the complaint is a CBA, though Plaintiffs do not respond to Jefferson Schools to clarify things one way or the other. (*See* ECF No. 4, PageID.78.) It is notable that Jefferson Schools' Notice of Removal does not mention a CBA or raise any arguments related to preemption by the LMRA. (*See* ECF No. 1.) The complaint does not explicitly refer to a CBA that governs the conditions of Plaintiffs' employment, though it appears likely that the contract

11

negotiations mentioned by Plaintiffs involved the Jefferson Clerical Association.[1] These ambiguities undercut Jefferson Schools' assertion that Plaintiffs' complaint "intentionally links" their claims to a CBA. (ECF No. 4, PageID.79.)

Assuming Plaintiffs refer to a CBA, the first question in the analysis is whether the Court must interpret that CBA's terms to resolve their claims. *Adamo*, 3 F.4th at 873.

Defendants cite to *Adamo*, a case where the defendant was a union and the "complaint [was] replete with references to the requirements of the [CBA]." *Id.* at 872. The claims at issue there were for tortious interference, injurious falsehood, and slander/defamation. *Id.* at 871.

---

[1] Though Jefferson Schools does not mention the other brief references to union contracts in the complaint, it is worth clarifying that these portions of the complaint have no bearing on Jefferson Schools' arguments. One part of the complaint relates to Morales' job as game manager being taken away, after which it is restored, and she is "informed that they had no authority to take the game manager [sic] away as is it [sic] part of the teacher's contract [sic]." (ECF No. 1, PageID.17.) The complaint also references the teachers' union intervening in a dispute related to grade changes. (*Id.* at PageID.18.) Jefferson Schools has not presented any arguments based on a CBA with *teachers*. Instead, it references a CBA between Jefferson Schools and "the Jefferson Clerical Association." (ECF No. 4, PageID.78.) There is also no indication that the Court would have to interpret a CBA involving the teachers' union to resolve claims brought by Plaintiffs, neither of whom are teachers. (*See* ECF No. 1, PageID.6.) These references to teachers' unions—neither of which are cited by Jefferson Schools—are therefore irrelevant here.

12

There is scant reference to CBA provisions in the complaint and Plaintiffs bring entirely different claims here than in *Adamo*.

Defendants also cite *Allis-Chalmers Corporation v. Lueck*, where the plaintiff raised a state law claim for "bad-faith handling of an insurance claim" that was brought under a disability plan included in a CBA. 471 U.S. 202, 203 (1985). In *Lueck*, the right at issue in the state law claim straightforwardly required contract interpretation, because that right:

> is defined by the contractual obligation of good faith, [so] any attempt to assess liability here inevitably will involve contract interpretation. The parties' agreement as to the manner in which a benefit claim would be handled will necessarily be relevant to any allegation that the claim was handled in a dilatory manner.

*Id.* at 218. Plaintiffs bring entirely different claims than in *Lueck* and there is nothing like *Lueck*'s interpretative dispute about the procedures outlined in a CBA.

Beyond the cases Jefferson Schools cites, there is no other basis to support removal. The Sixth Circuit indicates that courts should consider whether there is a "need to resolve any dispute concerning interpretation of CBA terms." *Paul*, 701 F.3d at 522; *see also Livadas v. Bradshaw*, 512

13

U.S. 107, 124 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished[.]"). Neither party raises any dispute about how to interpret the CBA; Jefferson Schools merely points out that Plaintiffs make allegations that may "relate[] to" a CBA. (ECF No. 4, PageID.78.) It does not suggest that it views the terms of a CBA any differently than Plaintiffs do or that any interpretive questions are raised by the complaint.

Instead, Morales' claim appears to be the relatively straightforward contention that—on a discriminatory basis—she received less of a raise than similarly situated employees. *See Town*, 455 Mich. at 695 (setting forth the fourth element of a discrimination claim as showing that "others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct"). She is not asking that the Court require Jefferson Schools to provide her with a raise she had the right to receive under a CBA. Instead, she appears to be making a factual claim that similarly situated employees who were younger received higher wage increases than she did for discriminatory reasons.

14

(ECF No. 1, PageID.14.) Morales claims she did not receive a raise at either of the levels provided to "principal" or "general" secretaries (*Id.* at PageID.14 (asserting that principal secretaries got a "2.5% increase," general secretaries got a "2% increase," and Morales, a principal secretary, received a "1% [increase] because of her seniority").) There does not appear to be any contractual interpretation question presented, nor does Jefferson Schools argue otherwise. *Cf. Paluda v. ThyssenKrupp Budd Co.*, 303 F. App'x 305, 309 (6th Cir. 2008) (holding that claims for age discrimination based on a plant closing agreement negotiated by a union were preempted by the LMRA, because they required "proof that plaintiffs were similarly situated to those employees who [qualified for a specific group in the plant closing agreement and]. . . were eligible for Mutual Consent Early Retirement Benefits as defined by the Collective Bargaining Agreement"). Here, where factual questions are presented rather than questions about how to interpret or apply a CBA, removal based on § 301 is improper. *See Bolin v. Gen. Motors, Inc.*, No. 16-cv-13686, 2017 WL 3675611, at *8–10 (E.D. Mich. 2017). Indeed, Jefferson Schools provides no basis to conclude that Morales' claims "*necessarily* require[]" contractual interpretation. *Id.* at *9 (citation omitted)

15

(emphasis in original). The mere possibility that discussion of a CBA might occur is not enough; for preemption to be triggered "the tort claim [must be] inextricably intertwined with consideration of the terms of the labor contract." *Lueck*, 471 U.S. at 213. Jefferson Schools has not demonstrated that here.

After determining that interpretation of a CBA is not required, the second step of the applicable analysis is considering whether the claimed right arises under state law or under a CBA. *Adamo*, 3 F.4th at 873. The relief sought by a plaintiff sheds light on this question. In a case where a plaintiff sought "compensatory and punitive damages, attorney's fees and costs, and . . . equitable relief . . . . [rather than] asking the court to manage her CBA-governed relationship with her employer," the Sixth Circuit viewed that as favoring remand to state court. *Paul*, 701 F.3d at 521. Here, Morales mentions a term of a CBA—a percentage salary increase for principal secretaries—but she is not seeking to enforce any provision of the CBA, including that one. Instead, her lawsuit seeks monetary and emotional damages, as well as attorney fees, pursuant to her state-law claims. (ECF No. 1, PageID.19–24.) That strongly suggests that she is not bringing a claim based on a right established by a CBA

16

but is instead properly bringing a state-law claim under ELCRA. *Cf. Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 270 (6th Cir. 2007) (holding that there was preemption where a plaintiff sought reinstatement, which required interpretation of a CBA). Plaintiffs are asserting a state-law claim here.

Courts have repeatedly concluded that state-law discrimination claims are not preempted by the LMRA. The Supreme Court has held that "the mere fact that a broad contractual protection against discriminatory—or retaliatory discharge may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412–13 (1988). Courts have explained that *Lingle* "implies that discrimination claims are unlikely to be preempted because they turn on facts rather than a CBA provision." *Bolin*, 2017 WL 3675611, at *8; *see also Castanon v. United Parcel Serv., Inc.*, 624 F. Supp. 3d 846, 853 (E.D. Mich. 2022); *Tisdale*, 25 F.3d. at 1312 ("It should be self-evident that if Congress did not preempt state civil rights actions by operation of federal civil rights law it could not have meant to do so through federal

17

labor law."). Because Jefferson Schools has not shown that resolving Plaintiffs' claims requires interpreting a CBA and because Plaintiffs assert rights arising under state law, the LMRA does not provide a basis for removal.

Accordingly, Jefferson Schools' arguments for removal under the substantial federal question doctrine fail.

### B. The Artful Pleading Doctrine

Jefferson Schools also argues that the "artful pleading" doctrine supports removal of this case to federal district court. (ECF No. 4, PageID.79.) "Under the artful-pleading doctrine, a federal court will have jurisdiction if a plaintiff has carefully drafted the complaint so as to avoid naming a federal statute as the basis for the claim, and the claim is in fact based on a federal statute." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 561 (6th Cir. 2007). Jefferson Schools provides a brief statement of the law related to this doctrine, acknowledging that it bears the burden of establishing a right to removal and noting that doubts are to be resolved against removal. (*See* ECF No. 4, PageID.79–80.) It nonetheless makes no attempt to apply the artful-pleading doctrine to the complaint. (*Id.*) Given Jefferson Schools' conclusory discussion of the

artful-pleading doctrine, it appears that it intends to rely on the arguments related to the ADEA and the LMRA the Court rejected in the previous section. Accordingly, because those arguments fail, Jefferson School's reliance on the artful-pleading doctrine as a basis for removal fails, as well. The Court lacks subject matter jurisdiction over this case.

## IV. Conclusion

Because Jefferson Schools has not met its burden and established that the Court has subject matter jurisdiction, the issue of whether the Board of Education for Jefferson Schools is a Defendant in the case and whether that entity should be included as a party in the removal notice is moot.

For the reasons set forth above, the Court concludes that it lacks subject matter jurisdiction and REMANDS the case to Monroe County Circuit Court for further proceedings.

IT IS SO ORDERED.

Dated: November 1, 2024         s/Judith E. Levy
Ann Arbor, Michigan           JUDITH E. LEVY
                                          United States District Judge

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 1, 2024.

                                            s/William Barkholz
                                            WILLIAM BARKHOLZ
                                            Case Manager